Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CHARLES REINHARDT,<br><br>                    Plaintiff,<br><br>          v.<br><br>THE NEW HOME COMPANY INC.,<br>H. LAWRENCE WEBB, PAUL C.<br>HEESCHEN, GREGORY P.<br>LINDSTROM, CATHEY LOWE,<br>DOUGLAS C. NEFF, SAM<br>BAKHSHANDEHPOUR, MICHAEL<br>BERCHTOLD, and WAYNE<br>STELMAR,<br><br>                    Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Charles Reinhardt ("Plaintiff"), by and through his undersigned

counsel, for his complaint against defendants, alleges upon personal knowledge with

- 1 -

respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This is an action brought by Plaintiff against The New Home Company Inc. ("New Home" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78t(a), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which New Home will be acquired by funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, Inc. (together with its consolidated subsidiaries, "Apollo") through their subsidiaries Newport Holdings, LLC ("Newport" or "Parent") and Newport Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On July 23, 2021, New Home and the Apollo Funds issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") dated July 23, 2021, to sell New Home to the Apollo Funds. Under the terms of the Merger Agreement, the Apollo Funds will acquire all outstanding shares of New Home for $9.00 per share in cash (the "Offer Price"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on August 10, 2021.  The Tender Offer is scheduled to expire at 12:00 Midnight, New York City

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

time, on September 8, 2021 (one minute after 11:59 P.M., New York City time, on September 7, 2021).  The Proposed Transaction values New Home at an enterprise value of approximately $338 million.

3.     On August 10, 2021, New Home filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that New Home stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the background of the process leading to the sale of the Company; (ii) New Home management's financial projections; and (iii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Citigroup Global Markets Inc. ("Citigroup").  Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(e) and 20(a) of the Exchange Act.

4.     In short, the Proposed Transaction will unlawfully divest New Home's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## **JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  New Home maintains corporate offices, previously serving as the Company's headquarters, in this District.   Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## **PARTIES**

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of New Home.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9.     Defendant New Home is a Delaware corporation with its principal executive offices located at 6730 N Scottsdale Rd., Suite 290, Scottsdale, Arizona 85253 and corporate offices located at 15231 Laguna Canyon Rd, Suite 250, Irvine, California 92618.  New Home is a new generation homebuilder focused on the design, construction and sale of innovative and consumer-driven homes.   New Home's common stock is traded on the New York Stock Exchange under the ticker symbol "NWHM."

10.     Defendant H. Lawrence Webb ("Webb") is a co-founder of the Company, has been Executive Chairman of the Board since August 2019, and has been Chairman of the Board and a director of the Company since the completion of New Home's initial public offering ("IPO") in January 2014.   Defendant Webb was previously Chief Executive Officer ("CEO") of the Company from 2010 to August 2019.

11.     Defendant Paul C. Heeschen ("Heeschen") has been a director of the Company since the completion of its January 2014 IPO.

12.     Defendant Gregory P. Lindstrom ("Lindstrom") has been a director of the Company since the completion of its January 2014 IPO.

13.     Defendant Cathey Lowe ("Lowe") has been a director of the Company since the completion of its January 2014 IPO.

14.     Defendant Douglas C. Neff ("Neff") has been a director of the Company since the completion of its January 2014 IPO.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

15.    Defendant Sam Bakhshandehpour ("Bakhshandehpour") has been a director of the Company since the completion of its January 2014 IPO.

16.    Defendant Michael Berchtold ("Berchtold") has been Lead Independent Director since February 2018 and has been a director of the Company since the completion of its January 2014 IPO.

17.    Defendant Wayne Stelmar ("Stelmar") is a co-founder of the Company and has been a director of the Company since the completion of its January 2014 IPO.

18.    Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.    Apollo is a high-growth, global alternative asset manager, seeking to provide clients excess return at every point along the risk-reward spectrum from investment grade to private equity with a focus on three business strategies: yield, hybrid and opportunistic.  Through its investment activity across its fully integrated platform, Apollo serves the retirement income and financial return needs of clients and offers innovative capital solutions to businesses.  As of March 31, 2021, Apollo had approximately $461 billion of assets under management.

20.    Parent is a Delaware limited liability company controlled by funds managed by Apollo.

21.    Merger Sub is a Delaware corporation and a wholly owned, direct subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

### Company Background

22.    New Home is a new generation homebuilder focused on the design, construction and sale of innovative and consumer-driven homes in major metropolitan areas within select growth markets in California and Arizona, including Southern California, the San Francisco Bay area, metro Sacramento and the greater Phoenix area. New Home was founded in 2009, towards the end of an unprecedented downturn in the U.S. homebuilding industry, as The New Home Company LLC.

23.    In January 2014, New Home changed its name to The New Home Company Inc. and completed its IPO.  Since its IPO, the Company has transformed from a primarily high-end builder in California with a majority of revenues derived from joint venture projects to a more diversified builder with expanded product offerings to include more affordably priced homes and geographic diversification with the vast majority of revenues derived from wholly owned communities.  The Company continues to emphasize quality, design and customer service as integral to its brand. Among the numerous customer service, quality and design awards New Home has received, Eliant Homebuyer Survey Company has rated the Company in the top two of overall homebuyer satisfaction for the past eight years, as well as America's top builder

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

in four of the past eight years.  New Home has been recognized as having one of the top communities or master plans in the United States for five consecutive years.  Since its founding, New Home has been awarded over 300 other architectural, design, sales and customer service awards including over 25 community of the year awards.

24.    The Company is organized into three reportable segments: Arizona homebuilding, California homebuilding and fee building.    The California homebuilding operation is comprised of divisions in Northern California and Southern California.

25.    On July 29, 2021, the Company announced its second quarter 2021 financial results.  For the 2021 second quarter, the Company generated pretax income of $6.1 million, compared to a $41.2 million pretax loss in the prior year period.  Net income for the 2021 second quarter was $4.8 million, or $0.26 per diluted share, compared to a net loss of $24.3 million, or ($1.32) per diluted share, in the prior year period.  Total revenues for the 2021 second quarter were $140.5 million compared to $99.0 million in the prior year period.  Commenting on the Company's financial results, defendant Webb stated:

> The New Home Company continued to benefit from a strong housing market and its intent focus on improving gross margins by managing sales price and pace, which resulted in $4.8 million of net income for the 2021 second quarter.  Our strategy over the past few years to diversify both our

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

product offerings and geographic presence has been a success.  Our recent acquisition of Epic Homes in Denver, Colorado made a positive contribution during the quarter, and we expect this to continue based on solid demand in this market and over $130 million in backlog as of the end of the quarter.  We experienced strong demand across all of our markets and product offerings, and we intentionally limited our sales releases during the quarter to implement periodic price increases and manage our backlog and construction schedules.  Despite this metering of sales, our absorption pace still increased by 50% as compared to the 2020 second quarter with both our Southern California and Northern California markets increasing their absorption pace by over 100% during the second quarter as compared to the prior year.

**The Proposed Transaction**

26.    On July 23, 2021, New Home and the Apollo Funds issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

SCOTTSDALE, Ariz. & NEW YORK--The New Home Company (NYSE: NWHM) ("NWHM" or "the Company") and funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, Inc. (NYSE: APO) (together with its consolidated subsidiaries "Apollo") today announced that they have entered into a definitive merger agreement

- 9 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

pursuant to which the Apollo Funds have agreed to acquire the Company in an all-cash transaction for $9.00 per share. The transaction values NWHM at an enterprise value of approximately $338 million.

Under the terms of the agreement, which has been unanimously approved by the NWHM Board of Directors, the Apollo Funds will commence a tender offer to acquire all outstanding shares of NWHM for $9.00 per share in cash.   The purchase price represents an 85% premium to the closing stock price on July 22, 2021 of $4.86 per share and a 51% premium to the 90-day volume-weighted average price.   The holders of approximately 30% of NWHM's shares of common stock have agreed to tender their shares to the Apollo Funds pursuant to the tender offer in accordance with the terms of a support agreement.

Founded in 2009, the New Home Company is a new generation homebuilder focused on the design, construction, and sale of innovative and consumer-driven homes in key markets across California, Arizona and Colorado.  The Company's range of product offerings from entry level up through luxury homes and communities have generated significant organic growth.  As homebuilders continue to consolidate amid favorable

- 10 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

supply and demand dynamics in the U.S. housing market, this transaction is designed to give the Company greater operational and financial flexibility to scale its platform while maximizing value for shareholders.

Founded in 2009, the New Home Company is a new generation homebuilder focused on the design, construction, and sale of innovative and consumer-driven homes in key markets across California, Arizona and Colorado. The Company's range of product offerings from entry level up through luxury homes and communities have generated significant organic growth. As homebuilders continue to consolidate amid favorable supply and demand dynamics in the U.S. housing market, this transaction is designed to give the Company greater operational and financial flexibility to scale its platform while maximizing value for shareholders.

"Over the last several years, we have transformed the company into a growing and diversified builder with operations in three states," said H. Lawrence Webb, Executive Chairman of The New Home Company Board of Directors. "We have strengthened our balance sheet, streamlined our cost structure and repositioned our product offerings to cater to a deeper pool of buyers. Apollo's ability to provide flexible capital and deep

- 11 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

knowledge of the homebuilding industry will help us to accelerate the growth of our business.  Following a thorough review of the opportunities available to the Company, The New Home Company Board of Directors unanimously determined that entering into this agreement is the best path forward to maximize value for shareholders."

"As consumer demand for new homes accelerates amid limited supply, we continue to see exciting opportunities to invest in the residential housing market," said Peter Sinensky, Partner at Apollo.  "New Home's consumer-driven approach and dedicated focus on integrating unique design and architecture has separated the Company as a best-in-class homebuilder.  We are excited to work with the management team to execute on the Company's growth strategy and provide more homes to consumers across the country."

"I am extremely proud of our team and the progress we've made over the last few years in transforming the company into a more profitable, better positioned homebuilder," said Leonard Miller, President & Chief Executive Officer of New Home.  "We are excited to enter into this new chapter together with Apollo, who shares our strategic vision for New

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Home as a platform for delivering quality homes and communities with award-winning design and unparalleled customer experience. By joining forces with Apollo, we will have the financial flexibility to build on our recent successes and take the company to new heights."

The closing of the transaction is subject to customary closing conditions and the tender of shares representing at least a majority of the Company's outstanding common stock to the purchaser, an entity wholly owned by the Apollo Funds, and is expected to close in the second half of the Company's fiscal year. Following the successful completion of the tender offer, the Apollo Funds will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price. The transaction will be financed with equity provided by the Apollo Funds and, if required, a committed debt financing package. Other than commitments in respect of a revolving credit facility, no incremental debt is expected to be raised in connection with the transaction.

Upon the completion of the transaction, NWHM will become a privately held company and shares of NWHM common stock will no longer be listed on any public market.

- 13 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Citigroup Global Markets Inc. is acting as exclusive financial advisor to NWHM and Latham & Watkins LLP is acting as legal advisor to NWHM. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal advisor and J.P. Morgan Securities LLC is acting as financial advisor to the Apollo Funds.

**Insiders' Interests in the Proposed Transaction**

28.     New Home insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of New Home.

29.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Apollo.  Under the terms of the Merger Agreement, upon consummation of the Proposed Transaction, all vested and unvested Company options and restricted stock units will be converted into the right to receive cash payments.  The following table sets forth the cash payments the Company's insiders will receive in connection with their options, restricted stock units, and tendering of their shares of common stock in the Tender Offer:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

| Name | Vested Stock Options (#) | Value of Vested Stock Options ($)(1) | Unvested Stock Options (#) | Value of Unvested Stock Options ($)(1) | Restricted Stock Units (#) | Value of Restricted Stock Units ($)(1) | Shares of Common Stock (#) | Value of Common Stock ($)(1) |
|---|---|---|---|---|---|---|---|---|
| *Current or Former Non-Employee Directors* | | | | | | | | |
| Sam Bakhshandehpour | 0 | 0 | 0 | 0 | 9,917 | 89,253 | 58,385 | 525,465 |
| Michael Berchtold | 0 | 0 | 0 | 0 | 9,917 | 89,253 | 81,085 | 729,765 |
| Paul C. Heeschen | 0 | 0 | 0 | 0 | 9,917 | 89,253 | 115,585 | 1,040,265 |
| Gregory P. Lindstrom | 0 | 0 | 0 | 0 | 9,917 | 89,253 | 61,085 | 549,765 |
| Cathey S. Lowe | 0 | 0 | 0 | 0 | 9,917 | 89,253 | 57,085 | 513,765 |
| Douglas C. Neff | 0 | 0 | 0 | 0 | 9,917 | 89,253 | 16,759 | 150,831 |
| Wayne Stelmar | 0 | 0 | 0 | 0 | 9,917 | 89,253 | 845,227 | 7,607,043 |
| *Current or Former Executive Officers* | | | | | | | | |
| Leonard Miller | 69,168 | 231,776 | 63,350 | 220,596 | 216,267 | 1,946,403 | 49,561 | 446,049 |
| John M. Stephens | 55,463 | 185,889 | 50,935 | 177,405 | 177,431 | 1,596,879 | 87,661 | 788,949 |
| H. Lawrence Webb | 73,712 | 246,498 | 65,623 | 227,961 | 109,302 | 983,718 | 846,254 | 7,616,286 |

30.    Moreover, pursuant to the Merger Agreement, if the closing of the Proposed Transaction occurs prior to the payment of bonuses under the 2021 Executive Bonus Program, Company executives will be entitled to accelerated vesting of their annual bonus awards, as set forth in the following table:

| Name | Target Bonus | Maximum Bonus |
|---|---|---|
| Leonard Miller | $1,050,000 | $ 2,100,000 |
| John M. Stephens | $ 600,000 | $ 1,200,000 |
| H. Lawrence Webb | $ 550,000 | $ 1,100,000 |

31.    In addition, if they are terminated in connection with the Proposed Transaction, New Home's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Name | Cash($)(1) | Equity($)(2) | Perquisites/ Benefits ($)(3) | Other ($)(4) | Total ($) |
|---|---|---|---|---|---|
| Leonard Miller | 3,500,000 | 2,166,999 | 25,623 | 437,500 | 6,130,122 |
| John M. Stephens | 2,400,000 | 1,774,284 | 25,409 | 264,000 | 4,463,693 |
| H. Lawrence Webb | 2,000,000 | 1,211,679 | 21,670 | 300,000 | 3,533,349 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

32.    The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to New Home's

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

stockholders.    The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal.

33.    Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the background of the process leading to the sale of the Company; (ii) New Home management's financial projections; and (iii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Citigroup.

***Material Omissions Concerning the Background of the Proposed Transaction***

34.    The Recommendation Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

35.    For example, the Recommendation Statement fails to disclose the "relative implied valuations of the Company D Proposal compared to the June 11 Proposal, and the challenges and uncertainties of the Company D Proposal relative to the June 11 Proposal" discussed at the June 24, 2021 Board meeting.  Recommendation Statement at 17.  Similarly, the Recommendation Statement fails to disclose the "specific details and analysis of the Company D Proposal, and [] comparison of the Company D Proposal to the June 11 Proposal" discussed at the July 16, 2021 Board meeting.  *Id*. at 18.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

36.    The omission of this information renders the statements in the "Background of the Offer" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act

***Material Omissions Concerning New Home Management's Financial Projections***

37.    The Recommendation Statement omits material information regarding Company management's financial projections.

38.    For example, the Recommendation Statement fails to disclose the line items underlying the Company's (i) gross profit; (ii) net income; (iii) EBIT; and (iv) unlevered free cash flow.

39.    Additionally, in connection with Citigroup's *Discounted Cash Flow Analysis*, Citigroup utilized the Company's estimated tax savings from deferred tax assets, the Company's estimated real estate inventory and treated stock-based compensation as a cash expense.  The Recommendation Statement, however, fails to disclose the Company's estimated tax savings from deferred tax assets, the Company's estimated real estate inventory and stock-based compensation over the projection period.

***Material Omissions Concerning Citigroup's Financial Analyses***

40.    The Recommendation Statement describes Citigroup's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Citigroup's fairness opinion and analyses fails to include key inputs and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

assumptions underlying these analyses. Without this information, as described below, New Home's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citigroup's fairness opinion in determining whether to tender their shares in the Tender Offer or seek appraisal.

41.    With respect to Citigroup's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the estimated tax savings from deferred tax assets during the period from July 1, 2021 through December 31, 2025; (ii) stock based compensation over the projection period that was treated as a cash expense; (iii) quantification of the Company's estimated real estate inventory as of December 31, 2025; (iv) quantification of the inputs and assumptions underlying the discount rate range of 11.3% to 12.9%; (v) quantification of the Company's net debt as of June 30, 2021; (vi) quantification of the value of deferred purchase price with respect to the acquisition of the Epic Companies as of June 30, 2021; (vii) quantification of the value of unconsolidated investments as of June 30, 2021; and (viii) quantification of the number of outstanding shares of the Company on a fully diluted basis.

42.    With respect to Citigroup's *Present Value of Future Share Price Analysis*, the Recommendation Statement fails to disclose quantification of the inputs and assumptions underlying the discount rate of 17.75%.

- 18 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

43.     With respect to Citigroup's *Selected Public Companies Analysis*, the Recommendation Statement fails to disclose why the price/book value multiple for Hovanian Enterprises, Inc. was deemed to be not meaningful for purposes of the analysis.

44.     The omission of this information renders the statements in the "Opinion of the Company's Financial Advisor" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

45.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other New Home stockholders will be unable to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations
### of Section 14(e) of the Exchange Act

46.     Plaintiff repeats all previous allegations as if set forth in full.

- 19 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

47.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer commenced in conjunction with the Proposed Transaction.

48.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer commenced in conjunction with the Proposed Transaction.

49.     As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

**<u>COUNT II</u>**

**Claims Against the Individual Defendants for**

**Violation of Section 20(a) of the Exchange Act**

50.     Plaintiff repeats all previous allegations as if set forth in full.

51.     The Individual Defendants acted as controlling persons of New Home within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

of their positions as officers or directors of New Home and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.    The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.    They were, thus, directly involved in the making of this document.

54.    In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating,

- 21 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

55.    By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of New Home, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.    Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Dated:  August 18, 2021

**WEISSLAW LLP**

By: */s/Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:   310/209-2348
          -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

- 23 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS